UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TARENCE BANKS,

        Plaintiff,

vs.

                        Case No. 14-CV-0381

NURSE LESLIE, UNKNOWN,
NURSE BILL, NURSE MEHRING,
CHRISTOPHER SCHMALING, NICK KOLDEWAY,
PATRICK NOONAN, MELISSA A. GONZALES,
SGT. MELISSA MORAN, LT. SHAWN BARKER,
LT. BRADLEY FRIEND, UNKNOWN,
DOUGLAS WEARING, and PORFIRIO LEDEZMA,

        Defendants.

---

PROPOSED FINDINGS OF FACT

---

NOW COME the Defendants, Lieutenant Shawn Barker, Lieutenant Bradley Friend, Sergeant Melissa A. Gonzales, Deputy Nick Koldeway, Sergeant Porfirio Ledezma, Sergeant Melissa Moran, Patrick Noonan, Sheriff Christopher Schmaling and Captain Douglas Wearing, by and through their attorneys, Bascom, Budish & Ceman, S.C., and as and for their proposed findings of fact submitted in support of their motion for summary judgment, state as follows:

1. The Plaintiff, Tarence Banks, was booked into the Racine County Jail ("RCJ") on November 12, 2013. (Affidavit of Douglas Wearing ("Wearing Aff.") ¶4, Ex. A (Banks Jail File), BANKS 000001.)

2. The Plaintiff filed, at a minimum, sixty inmate grievances regarding his various alleged conditions of confinement claims, deliberate indifference to his known, serious medical needs claims, due process violation claims and excessive force claim. (Affidavit of Jaclyn C. Kallie ("Kallie Aff.") ¶2, Ex. A (Deposition of Tarence Banks), 58:14-15;

Wearing Aff., Ex. A, BANKS 000002, 66-126, 192, 196-197, 213, 223, 227, 243-248, 251-273.)

3. If a grievance is denied, a written appeal may be filed with the jail administrator within fifteen (15) days. (Wearing Aff. ¶6, Ex. C (RCJ Handbook), BANKS 000560.)

4. The Plaintiff received at least six verbal warnings, nine minor violations and twenty-three major violations during his period of incarceration at RCJ. (Wearing Aff., Ex. A, BANKS 000127-184, 191, 193, 206-210, 214-242, 249-250, 696-776.)

5. If an inmate wishes to appeal a disciplinary decision, the appeal must be submitted in written form within 24 hours of the finding decision. (Wearing Aff., Ex. C, BANKS 000565.)

6. The Plaintiff's appeal of disciplinary decisions for Incident #14-000043 and Incident #14-000248 was untimely. (Wearing Aff., Ex. A, BANKS 000103-104.)

7. The Plaintiff's claims against Christopher Schmaling are due to his status as Sheriff. (Kallie Aff., Ex. A, 59-60:6.)

8. The Plaintiff was not deprived of a cell, bed, or toilet. His use and access to these things were made more difficult due to his injuries and due to a lack of hand rails. (Kallie Aff., Ex. A, 24:9-25:2, 28:13-20, 30:9-12, 31:2-3, 31:16-18, 32:3-4.)

9. The Plaintiff was able to get in and out of bed and use the toilet. (Kallie Aff., Ex. A, 26:14-17, 27:17-20, 30:13-16, 31:23-32:2, 32:5-8.)

10. The Plaintiff had difficulty receiving and eating his meals but was never denied food while at RCJ. (Kallie Aff., Ex. A, 45:9-19, 46:14-47:13.)

11. The Plaintiff often gave away food in exchange for assistance. (Cmplt., pp. 7 (DN 1); Kallie Aff., Ex. A, 32:13-15.)

12. It is a violation of RCJ policy for an inmate to give a meal item to another inmate. (Wearing Aff., Ex. C, BANKS 000569.)

13. The Plaintiff did not get sick due to an alleged lack of food aside from alleged hunger pains. (Kallie Aff., Ex. A, 32:16-20.)

14. The Plaintiff had difficulty placing his clothes in the laundry bag and tying it in a knot (Cmplt., pp. 7 (DN 1); Kallie Aff., Ex. A, 45:20-24.)

15. The Plaintiff was able to exchange his uniform for a clean one and prepare his laundry bag with difficulty. (Kallie Aff., Ex. A, 48:7-15.)

16. The Plaintiff had difficulty tying his bed sheets down or making his bed, but he did receive bed sheets and a mattress. (Kallie Aff., Ex. A, 48:17-49:2.)

17. At no time was the Plaintiff deprived of a bed while in RCJ. (Kallie Aff., Ex. A, 31:2-3.)

18. Upon arrival to RCJ, the Plaintiff was placed on a shower restriction because he could not get his bandage wet. (Cmplt., pp. 8 (DN 1); Kallie Aff., Ex. A, 35:3-6.)

19. Upon doctor approval to shower, the Plaintiff was instructed to use the dayroom shower. (Cmplt., pp. 8 (DN 1); Kallie Aff., Ex. A, 36:24-37:4.)

20. When the Plaintiff had difficulty with the dayroom shower and requested a chair for use within the shower, RCJ provided him with a chair. (Kallie Aff., Ex. A, 37:11-13.)

21. Following a request for a handicap accessible shower, RCJ escorted the Plaintiff to the handicap accessible shower in intake, which had grab rails. (Kallie Aff., Ex. A, 38:21-40:3.)

22. A chair was placed in the handicap accessible intake shower. (Kallie Aff., Ex. A, 38:18-21.)

23. The Plaintiff was given a shower three times a week and at most went five days without a shower. (Kallie Aff., Ex. A, 39:11-40:3.)

24. RCJ records reflect that more often than not, the Plaintiff was provided the opportunity to shower in the handicap accessible shower three times a week but often refused. (Wearing Aff., Ex. A, BANKS 000194-195, 201; Wearing Aff. ¶7, Ex. D (RCJ Roll Call), BANKS 000276-546.)

25. As of December 17, 2014, the Plaintiff was provided the opportunity to shower every day in the handicap accessible shower in intake. (Kallie Aff., Ex. A, 41:19-42:3.)

26. The first reference to a wheelchair within the Plaintiff's medical file was on March 17, 2014, in a Medical Progress Note. (Wearing Aff. ¶5, Ex. B (Banks Medical File), BANKS MED 000355.) The Note acknowledges that the Plaintiff wanted a wheelchair, but the doctor did not prescribe one as medically necessary. (Id.)

27. The second reference to a wheelchair within the Plaintiff's medical file was on April 2, 2014, in an Inmate Request for Medical Attention form that includes the Plaintiff's personal request for wheelchair. (Wearing Aff., Ex. B, BANKS MED 000351.)

28. The Plaintiff refused to go his doctor's visit on April 10, 2014. (Wearing Aff., Ex. B, BANKS MED 000349-350.)

29. The third reference to a wheelchair within the Plaintiff's medical file was on May 1, 2014, in a Medical Progress Note. (Wearing Aff., Ex. B, BANKS MED 000347.) The doctor merely stated that the Plaintiff could use a wheelchair to get around. (Id.) The doctor does not prescribe a wheelchair as a medical necessity. (Id.)

30. The final reference to a wheelchair within the Plaintiff's medical file was on May 19, 2014, in an Inmate Request for Medical Attention form where the Plaintiff alleged his doctor prescribed a wheelchair. (Wearing Aff., Ex. B, BANKS MED 000342.)

31. During the Plaintiff's May 20, 2014 doctor's visit, the doctor makes no mention of a wheelchair. (Wearing Aff., Ex. B, BANKS MED 000341.)

32. The Plaintiff's claims regarding washing his wound and application of rash cream is against the nursing staff. (Kallie Aff., Ex. A, 49:6-13; 51:6-15.)

33. The Plaintiff was only denied a mattress from 8:00 AM to 8:00 PM, while he was placed in disciplinary segregation, after he was found guilty of violating RCJ policy. (Kallie Aff., Ex. A, 52:7-53:8.)

34. It is RCJ policy to remove mattresses during the hours of 8:00 AM to 8:00 PM while inmates are placed in disciplinary segregation. (Wearing Aff., Ex. C, BANKS 000566.)

35. On January 2, 2014, the Plaintiff received a prescription for an extra mattress. (Id., Ex. B, BANKS MED 000170, 176.)

36. On January 13, 2014, the Plaintiff requested to be moved out of medical segregation because he felt healthy enough to go to the general population. (Id., Ex. B, BANKS MED 000170, 176.)

37. Per his request and medical clearance, the Plaintiff was moved to the general population. (Id., Ex. A, BANKS 000081.)

38. When the Plaintiff was moved to disciplinary segregation from January 29, 2014 to February 9, 2014, he was not prescribed an extra blanket or compression socks. (Id., Ex. A, BANKS 000274.)

39. An accused inmate may request an administrative hearing on any major rule violation. (Id., Ex. C, BANKS 000565.)

40. Inmates are provided the opportunity to be present at a disciplinary hearing, make a statement and present relevant evidence. (Id., Ex. C, BANKS 000565.)

41. A witness may be allowed to testify if it is not cumulative of other evidence and does not threaten the safety or security of the witness or facility. (Id., Ex. C, BANKS 000565.)

42. A hearing officer may hear testimony of a witness outside the presence of the accused if there is significant risk of bodily harm to the witness. (Id., Ex. C, BANKS 000565.)

43. Documented as Incident #14-000043, Nurse Mehring reported the Plaintiff had exposed himself to her. Nurse Mehring immediately notified Officer Venegas, who observed the Plaintiff moving his hand away from his groin. (Id., Ex. A, BANKS 000139-149.)

44. Deputy Mark Heifner prepared an incident report for Incident #14-000043. He interviewed Nurse Mehring about the incident and noted in the incident report that the Plaintiff had exposed himself to Nurse Mehring on at least three other occasions and had also exposed himself to Nurses Martinez and Ruskell. Deputy Heifner also interviewed the Plaintiff as part of his investigation. (Id., Ex. A, BANKS 000140-143.)

45. Correctional Officer Venegas completed a supplementary report regarding Incident #14-000043. (Id., Ex. A, BANKS 000144.)

46. A disciplinary hearing was scheduled for January 24, 2014 concerning Incident #14-000043. (Id., Ex. A, BANKS 000146.)

47. As a result of the disciplinary hearing for Incident #14-000043, the Plaintiff was placed in disciplinary segregation for ten days. (Id., Ex. A, BANKS 000146.)

6

Case 2:14-cv-00381-PP   Filed 02/04/15   Page 6 of 7   Document 37

48. Documented as Incident #14-000428, Correctional Officer Noonan moved the Plaintiff into disciplinary segregation on February 9, 2014. CO Noonan prepared an incident report, stating that upon arrival in disciplinary segregation, the Plaintiff did not agree with the items he was allowed to have and refused to enter his cell. After assistance was requested, the Plaintiff made a threat to CO Noonan. The statement was also heard by Correctional Officer Nelson. (Id., Ex. A, BANKS 000171-177.)

49. A disciplinary hearing was scheduled for February 13, 2014 concerning Incident #14-000248. (Id., Ex. A, BANKS 000176.)

50. The Plaintiff was found guilty by admission. (Id., Ex. A, BANKS 000173, 176.)

51. As a result of the disciplinary hearing for Incident #14-000248, the Plaintiff was placed in disciplinary segregation for fifteen days. (Id., Ex. A, BANKS 000173, 176.)

52. The Plaintiff was transferred to Dodge Correctional Institution on January 21, 2015. (Wearing Aff. ¶8.)

Dated this 3rd day of February, 2015.

**BASCOM, BUDISH & CEMAN, S.C.**

_s/ Jaclyn C. Kallie_____
Timothy A. Bascom
State Bar No. 1010017
Jaclyn C. Kallie
State Bar No. 1088902
Attorney for Defendants
Lieutenant Shawn Barker, Lieutenant Bradley Friend, Sergeant Melissa A. Gonzales, Deputy Nick Koldeway, Sergeant Porfirio Ledezma, Sergeant Melissa Moran, Patrick Noonan, Sheriff Christopher Schmaling and Captain Douglas Wearing

2600 North Mayfair Road, Suite 1140
Wauwatosa, WI 53226
(414) 476-0800