UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TARENCE BANKS**,

                Plaintiff,

v.                                               **Case No. 14-cv-381-pp**

**NURSE LESLIE,
UNKNOWN, Sued as Nurse Practitioner Doe,
NURSE BILL, Sued as Nurse Bill Doe,
NURSE MEHRING, CHRISTOPHER SCHMALING,
NICK KOLDEWAY, PATRICK NOONAN,
MELISSA A. GONZALES, SGT. MELISSA MORAN,
LT. SHAWN BARKER, LT. BRADLEY FRIEND,
UNKNOWN, Sued as Evans Doe, Classification Jailer,
DOUGLAS WEARING,
and PORFIRIO LEDEZMA,**

                Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 45), CONSTRUING PLAINTIFF'S REQUEST FOR CLARIFICATION AS A MOTION FOR RECONSIDERATION OF SCREENING ORDER, GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION OF SCREENING ORDER (DKT. NO. 51), DENYING PLAINTIFF'S REQUEST FOR RECONSIDERATION OF COUNSEL (DKT. NO. 51), DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 53), DIRECTING DEFENDANTS TO ADVISE THE COURT WITHIN TEN DAYS OF THE DATE OF THIS ORDER WHETHER THEY HAVE INFORMATION AS TO EVANS DOE/JOSHUA EVANS'S CURRENT WHEREABOUTS, AND ADVISING THAT THE COURT WILL ENTER AN AMENDED SCHEDULING ORDER ONCE ALL DEFENDANTS HAVE BEEN SERVED AND ANSWERED THE COMPLAINT**

---

<u>Motion to Compel Discovery (Dkt. No. 45)</u>

        The plaintiff, Tarence Banks, has filed a motion to compel discovery. Dkt. No. 45. He asked the court to compel the defendants to provide him with

1

additional responses to his First Request for Discovery and Request for Production of Documents.[1] The defendants filed a response to the motion to compel, in which they contend (a) that the plaintiff has failed to comply with Federal Rule of Civil Procedure 37(a) and Civil Local Rule 37 because he did not confer with the defendants before filing his motion and (b) that the plaintiff's motion is without merit. Dkt. No. 48.

A party may file a motion to compel discovery when another party fails to respond to interrogatories or requests for production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). The party filing the motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Additionally, Civil Local Rule 37 requires the moving party to "recite the date and time of the conference or conferences and the names of all parties participating in the conference or conferences."

The plaintiff's motion does not include a certification that he attempted to resolve his discovery dispute with the defendants prior to seeking court action. See generally, Dkt. No. 45. The court understands that, because the plaintiff is a pro se prisoner, he is unable to meet with the defendants in person to comply with this requirement. He could, however, have written to the defendants to try to work through his discovery concerns; he has not provided

---

[1] On December 18, 2014, Banks filed this discovery request with the court. Dkt. No. 33.

a certification that he did so. Even if he had conferred with the defendants and provided the proper certification, however, the court would deny the motion to compel, because the defendants' response reveals that they adequately responded to his discovery requests.

On January 20, 2015, the defendants served their response to the plaintiff's discovery requests, which included a document production consisting of 1,177 pages. Dkt. No. 49, Aff. of Attorney Jaclyn Kallie ¶2 and Ex. A. On February 16, 2015, the parties submitted a Confidentiality Stipulation and Order, Dkt. No. 44, which the court approved on February 18, 2015. On March 19, 2015, the defendants served amended responses to the plaintiff's discovery requests, providing an additional 51 pages of confidential documents. Dkt. No. 49 at ¶3 and Ex. B.

In his motion to compel, the plaintiff disputes the defendants' objections to numbers 2, 3, 7, 14, 18, 26, 27, 29, and 30 of his discovery requests. Dkt. No. 45. After the plaintiff signed the Confidentiality Stipulation, however, the defendants withdrew their objections to discovery requests 2 and 3, as indicated in their amended response. Dkt. No. 49-2 at 1. The defendants stated that they provided all responsive documents to requests 2 and 3. Dkt. No. 49-2 at 1-2. The plaintiff has not established that the defendant's responses to his requests are insufficient or incomplete.

Request number 7 states: "Places where handicap[ped] detainees are house[d] that's handicap accessible." Dkt. No. 49-1 at 3. The defendants objected to that request as "vague and ambiguous and contains undefined

3

terms." Id. They nonetheless responded to the interrogatory by stating that portions of the E Wing at the Racine County Jail are accessible for wheelchair use and that certain bathrooms in the E Wing and Intake are handicap accessible. Id.

Request number 14 sought "[a]ny documents sign [sic] for Plaintiff by deputy or correctional officer." Id. at 4. The defendants objected to the request as vague, ambiguous, and unclear, but they also provided the plaintiff with his jail file. Id.

Request number 18 states: "Copy of duties of the nurse at Racine County Jail through C.H.C. [Correctional Health Care] or Racine County Jail contacts." Id. at 5. The defendants objected to request 18 as vague, ambiguous, and unclear. They also responded that they do not possess or control the policies, procedures or duties of C.H.C. employees. Id. The defendants further stated that to the extent that the contract between C.H.C. and Racine County contains a description of the duties of the C.H.C. nurses, the contract was attached to their response. Id.

Request number 26 sought "[c]opies of Racine County Jail inmate health care, inmate health screening, and health care policy." Id. at 7. The defendants objected to this request as "overly broad and burdensome as the policies and procedure governing the Racine County Jail contain numerous references to 'inmate health care.'" Id. They nonetheless provided the plaintiff with the jail's healthcare screening policy.

4

Request number 27 sought a copy of the Racine County Jail policy and procedure manual. Id. The defendants objected to request 27 because the documents requested "are voluminous and contain many documents which are neither relevant nor reasonably calculated to lead to the discovery of relevant evidence." Id. The defendants went on to state that, "[t]o the extent that the plaintiff had made specific requests for portions of the policy and procedure manuals which were in effect during the plaintiff's incarceration at the Racine County Jail, those policy and procedure manuals are attached hereto." Id.

Request number 29 seeks a copy of inmate Manuel Garcia's placement log in the Racine County Jail, the reasons why he was placed where he was, and a statement regarding whether he was placed anywhere for medical reasons. Id. The defendants objected to the plaintiff's discovery request because it sought privileged information about another inmate. Id. The defendants also stated that "there are multiple individuals named Manuel Garcia who were incarcerated at the Racine County Jail" and that they "require[ed] additional identifying information on which of the individuals named Manuel Garcia the plaintiff is referencing[.]"Id. at 7-8. On May 15, 2015, however, the plaintiff filed an authorization from Manuel Garcia. Dkt. No. 52. The defendants subsequently served a second amended discovery response on the plaintiff with the requested information. Dkt. No. 54 at 2 n.2.

Request number 30 sought any information on funding the Racine County Jail receives from the federal government. Dkt. No. 49-1 at 8. The defendants objected to this request as overly broad and ambiguous, but they

5

also answered that the jail receives funds from the State Criminal Alien Assistance Program.[2]

The court notes that the plaintiff argues that he received some documents where someone had written in dates and times, and others where "the screen has been redacted." Dkt. No. 45. He argues that these documents—whatever they are—were computer print-outs, and thus should not have handwriting or be redacted. Id. The plaintiff has not identified the documents to which he refers, or explained why the added or missing information is relevant. He also argues that "I know for a fact there are hand written logs for date's [sic] and times but haven't received them." Id. The defendant does not identify what these hand-written logs would chronicle, or how he knows they exist. The court believes that the defendants have done the best they could to comply with the plaintiff's requests, even though it is not always clear what he is asking for.

As described above, the court's review of the defendants' responses to the plaintiff's requests reveals that the defendants have adequately responded to

---

[2] The United States Department of Justice Bureau of Justice Assistance administers the State Criminal Alien Assistance Program (SCAAP) in conjunction with the Bureau of Immigration and Customs Enforcement and Citizenship and Immigration Services, Department of Homeland Security. SCAAP provides federal payments to states and localities that incurred correctional officer salary costs for incarcerating undocumented criminal aliens with at least one felony or two misdemeanor convictions for violations of state or local law, and incarcerated for at least four consecutive days during the reporting period. Bur. Of Justice Assistance, SCAAP, https://www.bja.gov/ProgramDetails.aspx?Program_ID=86 (last visited Sept. 9, 2015).

the plaintiff's December 18, 2014 discovery request. Accordingly, the court will deny the plaintiff's motion to compel discovery.

## Request for Clarification (Dkt. No. 51)

On April 28, 2015, the plaintiff filed a letter requesting clarification as to whether the court's May 27, 2014 screening order (Dkt. No. 8) permitted him to proceed on a claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §12131, *et seq.* Dkt. No. 51. The plaintiff indicates that because, on the civil cover sheet, he marked the box that said "Amer. w/Disabilities Other," Dkt. No. 1-2, and because the court stated in the screening order that he was denied a handicap-accessible cell, suffered from not having his needs met, and asked for money damages, he clearly meant to bring an ADA claim. Dkt. No. 51. The screening order did not mention an ADA claim.[3] See 28 U.S.C. §1915A (court shall screen complaint and "identify cognizable claims"). The court construes the plaintiff's letter as a motion for reconsideration of the screening order.

The complaint itself does not mention the ADA, see Dkt. No.1, although, as he notes, the plaintiff did check the ADA box on the civil cover sheet he filed along with his complaint, see Dkt. No. 1-2. A screening court, however,

---

[3] On May 27, 2014, United States District Judge Lynn Adelman screened the complaint under 28 U.S.C. §1915A and permitted the plaintiff to proceed on Fourteenth Amendment conditions of confinement and deliberate indifference to a serious medical need claims regarding the conditions at the Racine County Jail and the alleged failure to treat his wound as directed; due process claims related to his disciplinary hearings which resulted in segregation stays; and an excessive force claim based on the allegation that defendant Koldeway shouldered him causing injury. Dkt. No. 8 at 5.

7

analyzes a litigant's actual claims, not just the legal theories that he articulates. Norfleet v. Walker, 684 F.3d 688, 690 (7th Cir. 2012).

In the complaint, the plaintiff alleges that he is an amputee; he lost his arm one month prior to his November 12, 2013, confinement at the Racine County Jail. Dkt. No. 1. According to the complaint, the plaintiff was housed in an intake cell for his first five days at the jail. The cell was not handicap accessible; it did not have any bed or wall rails, and the plaintiff had trouble getting up from his bed. As a result, the plaintiff alleges that he urinated on himself several times because he could not make it to the toilet. The plaintiff pressed the cell's emergency call button numerous times for help, but never received a response. Three days into his stay, the plaintiff asked how long he had to remain in the cell, and Officer Evans (presumably, defendant Unknown Evans Doe, Classification Jailer) said they hadn't figured out where to put him yet. The plaintiff told Officer Evans that he had urinated on himself.

The plaintiff alleges that after five days in the intake cell, he was transferred to "2D Day Room 4," or "Med/Seg," which also was not handicap accessible. The plaintiff's cellmate helped him with many tasks such as putting on deodorant, cleaning the cell, putting his clothes in the laundry bag, and changing the bandage on his back injury. The cellmate, however, "charged" the plaintiff with food from his meal tray in exchange for the help, so the plaintiff "starved" at times. Id. at 7. The cellmate also had to help the plaintiff get in and out of bed, and sometimes helped the plaintiff get off of the toilet. When the plaintiff asked Officer Evans where the handicap accessible cells were, Officer

Evans replied that they were on the other side of the jail but that "[defendant] Patrick Noonan states you will never see that side!" Id. at 8.

The plaintiff alleges that he was on shower restriction because there were no handicap accessible showers in 2D Dayroom 4. Although not entirely clear, it also appears that the plaintiff was on shower restriction because he could not get his bandage wet. Once the doctor approved the plaintiff for showers, he was instructed to use the dayroom shower, which had no handrails or bars. He fell off the chair staff gave him to use. The plaintiff then was approved to go downstairs to use a shower with handrails. A chair was placed in the shower, but it was the same type of chair he fell off of when he was upstairs. After about two months, the plaintiff received a medical shower chair, but staff removed the handrails from the chair which rendered it useless.

According to the plaintiff, he subsequently transferred to "Day Room 2," which also was not handicap accessible. In Day Room 2, the plaintiff did not have assistance from an inmate. He had trouble opening the Ziplock food bag for meals, and his food went flying to the floor. After this happened numerous times and the plaintiff wasn't given replacement food, he finally received Styrofoam food trays. The plaintiff also had trouble tying his laundry bag and making his bed.

In sum, the plaintiff alleges that between November 2013 and April 2014, he was denied access to a handicap accessible cell at the Racine County Jail, "suffering daily cause I couldn't get my handicap needs met." Id. at 17. The

plaintiff also alleges that he was denied access to a handicap accessible shower.

To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996)); see also 42 U.S.C. §12132. The plaintiff's allegations that he was denied a handicap accessible cell and access to handicap accessible showers arguably state a claim under the ADA. See, e.g., Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 671-72 (7th Cir. 2012); see also Alter v. Goord, 745 F. Supp. 2d 317, 338 (S.D.N.Y 2010)(an inmate stated a plausible claim under the Rehabilitation Act based on allegations that the prison failed to make reasonable accommodations to give him access to meals and showers).

The plaintiff also arguably states a claim under the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq.* See Jaros, 684 F.3d at 672 (inmate who alleged that the Illinois Department of Corrections' refusal to accommodate the inmate's disability kept him from accessing meals and showers on the same basis as other inmates stated a claim). To state a claim under the RA, the plaintiff must allege that (1) he is qualified person, (2) with a disability, and (3) the Racine County Jail denied him access to a program or activity because of his disability. See id.; see also 29 U.S.C. §705(2)(B). Analysis under the ADA

10

and the RA is the same, except that the RA includes as an additional element the requirement that the entity denying access have received federal funds.[4] Jaros, 684 F.3d at 671-72.

The court notes that the plaintiff cannot obtain relief under both the ADA and the RA. Jaros, 684 F.3d at 672 (dispensing with ADA claim because prisoner "can have but one recovery"). The court's job at the screening stage, however, simply is to determine whether the plaintiff states a claim, and the plaintiff in this case does advance an ADA claim. The court finds, therefore, that the plaintiff may proceed under both the ADA[5] and the RA at this time.

Additional Matters

At the time the plaintiff filed his motion to compel, five defendants had not been served. The plaintiff had trouble identifying these defendants. On April 21, 2015, the court directed the U.S. Marshal's Service to make further efforts to serve four of the five defendants (Nurse Leslie, Nurse Mehring, Nurse Bill, and Nurse Practitioner Jane Doe), which included attempting to locate and serve them at the proper facility. Dkt. No. 47. The court also extended the

---

[4] Based on the defendants' response to the plaintiff's discovery request number 30 that the Racine County Jail receives funds from the State Criminal Alien Assistance Program, it appears that the Racine County Jail receives federal funding.

[5] The plaintiff seeks only monetary damages. In United States v. Georgia, 546 U.S. 151, 159 (2006), the Supreme Court declined to decide whether states are immune from suits for damages arising from conditions that violate the ADA but not the Constitution. Here, however, the plaintiff alleges violations of both the Constitution and the ADA. "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. at 159.

deadline for service on the four defendants until June 30, 2015. Id. A review of the docket indicates that on June 2, 2015, the marshals served Nurse Leslie, Nurse Mehring, Nurse Bill, and Nurse Practitioner Jane Doe. Dkt. No. 57. Attorneys W. Patrick Sullivan and Steven T. Elmer of the law firm of Siesennop & Sullivan have appeared on behalf of those defendants. Dkt. No. 59.

The fifth unserved defendant, "Unknown, Evans Doe, Classification Officer," still needs to be served. In response to the plaintiff's first request for discovery, the defendants stated that Classification Jailer Evans Doe "is believed to be Joshua Evans, address unknown." Dkt. No. 49-1 at 2. It appears, therefore, that this defendant no longer works at the Racine County Jail. Because this defendant is a former jail employee, the defendants likely have information as to his current whereabouts. The defendants must clarify to the court within **ten days** of the date of this order whether they have such information, and if they do, they must provide it to the court so that defendant Evans Doe may be served.

Because in this order the court now has allowed the plaintiff to proceed on two additional causes of action, and because four more defendants have been served and a fifth must still be served, the court will take this opportunity to place this case on a single litigation track as to all defendants. The court will deny the defendants' motion for summary judgment without prejudice. Dkt. No. 36. Once defendant Evans Doe has been served, and all of the defendants have answered the complaint, the court will enter an amended scheduling

order setting deadlines for the completion of discovery and for filing dispositive motions. Those deadlines will apply to all parties to this case.[6]

Plaintiff's Request for Reconsideration of his Motion to Appoint to Counsel (Dkt. No. 51)

In his letter request for clarification regarding the screening order, Dkt. No. 51, /the plaintiff also seeks reconsideration of the court's denial of his request for *pro bono* counsel, especially if he will be required to respond to two summary judgment motions (the recently-served medical professional defendants will probably be represented by separate counsel from those who now represent the non-medical defendants, see Dkt. No. 54 at 2). The plaintiff has consistently demonstrated his competence to proceed on his own throughout this case. Specifically, his filings show that he is capable of advocating for himself, conducting discovery, filings motions, and responding to motions. He asserts in his recently-filed motion for extension of time that he already has his own motion for summary judgment prepared. As the court stated above, it is going to give all parties additional time to complete discovery and file pretrial motions. Accordingly, at this stage, the court continues to believe that the plaintiff is capable of proceeding on his own. The court will deny without prejudice his request for appointment of counsel.

The court **ORDERS** that the plaintiff's motion to compel (Dkt. No. 45) is **DENIED**.

---

[6] The court will deny the plaintiff's motion for extension of time to respond to summary judgment and to file his own dispositive motion as moot, given the court's denial of the motion for summary judgment and decision to set new deadlines.

13

The court further **ORDERS** that the plaintiff's request for clarification (Dkt. No. 51), construed as a motion for reconsideration of the screening order, is **GRANTED**. The plaintiff may proceed on claims under the Americans with Disabilities Act and the Rehabilitation Act.

The court further **ORDERS** that after the unserved defendant (Unknown, sued as Evans Doe, Classification Officer) has been served, and all remaining defendants have answered the complaint, the court will enter an amended scheduling order setting deadlines for the completion of discovery and for filing dispositive motions.

The court further **ORDERS** that the plaintiff's motion for extension of time (Dkt. No. 53) is **DENIED AS MOOT**.

The court further **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 36) is **DENIED WITHOUT PREJUDICE**.

The court further **ORDERS** that, within **ten days** of the date of this order, the defendants shall advise the court whether they have information as to Classification Jailer Evans Doe/Joshua Evans's current whereabouts and, if so, shall provide court with that information so that he may be served.

Dated at Milwaukee this 10th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge