UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

TARENCE BANKS,

        Plaintiff,

vs.

Case No. 14-CV-0381

NURSE LESLIE PATTON, MAHITA GONE,
NURSE WILLIAM COE, NURSE DANA MEHRING,
CHRISTOPHER SCHMALING, NICK KOLDEWAY,
PATRICK NOONAN, MELISSA A. GONZALES,
SGT. MELISSA MORAN, LT. SHAWN BARKER,
LT. BRADLEY FRIEND, CO JOSHUA EVANS,
DOUGLAS WEARING, and PORFIRIO LEDEZMA,

        Defendants.

___

PROPOSED FINDINGS OF FACT
___

NOW COME the Defendants, Lieutenant Shawn Barker, Lieutenant Bradley Friend, Sergeant Melissa A. Gonzales, Deputy Nick Koldeway, Sergeant Porfirio Ledezma, Sergeant Melissa Moran, Patrick Noonan, Classification Officer Joshua Evans, Sheriff Christopher Schmaling and Captain Douglas Wearing, by and through their attorneys, Bascom, Budish & Ceman, S.C., and as and for their proposed findings of fact submitted in support of their motion for summary judgment, state as follows:

1.    The Plaintiff, Tarence Banks, was booked into the Racine County Jail on November 12, 2013. (Affidavit of Douglas Wearing ("Wearing Aff.") ¶4, Ex. A (Banks Jail File), BANKS 000001.)

2. The Plaintiff's claims against Christopher Schmaling are due to his status as Sheriff. (Affidavit of Jaclyn C. Kallie ("Kallie Aff.") ¶2, Ex. A (Deposition of Tarence Banks), 59-60:6.)

3. The Racine County Jail Inmate Handbook provides that when prisoners have a basis for a grievance or complaint, and informal resolution is not possible, a written complaint should be submitted to the jail administrator with the required information and in the required format. (Wearing Aff. ¶6, Ex. C (RCJ Handbook), BANKS 000559-560.) The inmate request form must be used, it must be legible, include the inmates name, SPN number, housing location, and date, be signed and submitted without profanity. (Id.)

4. Any inmate complaints or grievances that do not meet the outlined conditions or contain threats or profanity will not be responded to. (Id.) A response or resolution is provided for each legitimate complaint. (Id.)

5. Grievance appeals must be submitted in writing to the jail administrator within 15 days using an inmate request form. (Id.)

6. The Plaintiff filed, at a minimum, sixty inmate grievances regarding various complaints related to his confinement at Racine County Jail. (Kallie Aff., Ex. A, 58:14-15; Wearing Aff., Ex. A, BANKS 000002, 66-126, 192, 196-197, 213, 223, 227, 243-248, 251-273.)

7. The Plaintiff did not appeal any of his grievances. (See, generally, Wearing Aff., Ex. A.)

8. The Racine County Jail Inmate Handbook provides that disciplinary findings and imposed sanctions may be appealed to the Assistance Jail Administrator or the Lieutenant in charge of Jail Operations. (Wearing Aff., Ex. C, BANKS 000565.)

9. Once the disciplinary appeal is returned this decision can be further appealed to the Jail Administrator. (Id.)

10. Appeals must be in writing on an inmate request form and turned over to a staff member within 24 hours of the finding decision. (Id.)

11. The Plaintiff received at least six verbal warnings, nine minor violations and twenty-three major violations during his period of incarceration at Racine County Jail. (Wearing Aff., Ex. A, BANKS 000127-184, 191, 193, 206-210, 214-242, 249-250, 696-776.)

12. The Plaintiff's appeal of disciplinary decisions for Incident #14-000043 and Incident #14-000248 were untimely. (Id. at BANKS 000098, 103-106.)

13. The Plaintiff failed to appeal the remainder of his disciplinary decisions. (See, generally, Wearing Aff., Ex. A.)

14. The Plaintiff was not deprived of a cell, bed, or toilet. His use and access to these things were made more difficult due to his injuries and due to a lack of hand rails. (Kallie Aff., Ex. A, 24:9-25:2, 28:13-20, 30:9-12, 31:2-3, 31:16-18, 32:3-4.)

15. The Plaintiff was able to get in and out of bed and use the toilet. (Id. at 26:14-17, 27:17-20, 30:13-16, 31:23-32:2, 32:5-8.)

16. The Plaintiff had difficulty receiving and eating his meals but was never denied food while at Racine County Jail. (Id. at 45:9-19, 46:14-47:13.)

17. The Plaintiff often gave away food in exchange for assistance. (Cmplt., p. 7 (DN 1); Kallie Aff., Ex. A, 32:13-15.)

18. It is a violation of Racine County Jail policy for an inmate to give a meal item to another inmate. (Wearing Aff., Ex. C, BANKS 000569.)

19. The Plaintiff did not get sick due to an alleged lack of food aside from alleged hunger pains. (Kallie Aff., Ex. A, 32:16-20.)

20. The Plaintiff had difficulty placing his clothes in a laundry bag and tying it in a knot. (Cmplt., p. 7 (DN 1); Kallie Aff., Ex. A, 45:20-24.)

21. The Plaintiff was able to exchange his uniform for a clean one and prepare his laundry bag with difficulty. (Kallie Aff., Ex. A, 48:7-15.)

22. The Plaintiff had difficulty tying his bed sheets down to make his bed, but he did receive bed sheets and a mattress. (Id. at 48:17-49:2.)

23. At no time was the Plaintiff deprived of a bed while in Racine County Jail. (Id. at 31:2-3.)

24. Upon arrival to Racine County Jail, the Plaintiff was placed on a shower restriction because he could not get his bandage wet. (Cmplt., p. 8 (DN 1); Kallie Aff., Ex. A, 35:3-6.)

25. Upon doctor approval to shower, the Plaintiff was instructed to use the dayroom shower. (Cmplt., p. 8 (DN 1); Kallie Aff., Ex. A, 36:24-37:4.)

26. The dayroom showers are available to inmates on a daily basis between 6:00 AM to 8:00 AM and 8:00 PM to 10:00 PM. (Wearing Aff., Ex. C, BANKS 000554.)

27. When the Plaintiff had difficulty with the dayroom shower and requested a chair for use within the shower, Racine County Jail provided him with a chair. (Kallie Aff., Ex. A, 37:11-13.)

28. Following a request for a handicap accessible shower, Racine County Jail officers escorted the Plaintiff to a handicap accessible shower in the E-Wing, also known as the intake shower, which had grab rails. (Id. at 38:21-40:3; Wearing Aff. ¶¶9-10.)

29. A chair was placed in the handicap accessible intake shower. (Kallie Aff., Ex. A, 38:18-21.)

4

Case 2:14-cv-00381-PP   Filed 03/21/16   Page 4 of 10   Document 147

30. The Plaintiff was offered a shower at least three times a week and at most went five days without a shower. (Id. at 39:11-40:3.)

31. Racine County Jail records reflect that more often than not, the Plaintiff was provided the opportunity to shower in the handicap accessible shower three times a week but often refused. (Wearing Aff., Ex. A, BANKS 000194-195, 201; ¶5, Ex. B (Banks Medical File), BANKS MED 000177, 179; ¶11, Ex. D (RCJ Roll Call), BANKS 000276-546.)

32. As of December 17, 2014, the Plaintiff was provided the opportunity to shower every day in the handicap accessible shower in intake. (Kallie Aff., Ex. A, 41:19-42:3.)

33. On March 17, 2014, in a Medical Progress Note, it was documented that the Plaintiff requested a wheelchair, but the doctor did not prescribe one as medically necessary. (Wearing Aff., Ex. B, BANKS MED 000355.)

34. On April 2, 2014, the Plaintiff filed an Inmate Request for Medical Attention form to medical staff requesting a wheelchair. (Id. at BANKS MED 000351.)

35. At no point during the Plaintiffs incarceration at Racine County Jail did a doctor prescribe a wheelchair as a medical necessity. (See, generally, Wearing Aff., Ex. B.)

36. The Plaintiff's claim regarding washing his wound and application of rash cream is against the nursing staff. (Kallie Aff., Ex. A, 49:6-13; 51:6-15.)

37. No medical professional ever prescribed a prosthetic; rather Dr. Herr specifically stated that because the Plaintiff had a functioning arm there was no need for a prosthetic. (Wearing Aff., Ex. A, BANKS 000088-89; Ex. B, BANKS MED 000165; see, generally, Ex. B.)

38. It is Racine County Jail policy to remove mattresses during the hours of 8:00 AM to 8:00 PM while inmates are placed in disciplinary segregation. (Wearing Aff., Ex. C, BANKS 000566.)

39. The Plaintiff was only denied a mattress from 8:00 AM to 8:00 PM, only while he was placed in disciplinary segregation after he was found guilty of violating Racine County Jail policies. (Kallie Aff., Ex. A, 52:7-53:8; see, also, Wearing Aff., Ex. C, BANKS 000566.)

40. When the Plaintiff was moved to disciplinary segregation in February 2014, he was not prescribed an extra blanket or compression socks. (Wearing Aff., Ex. B, BANKS MED 000184, 353-355; see, generally, Ex. B.)

41. Inmates placed in segregation retain hygiene items, including a blanket. (Wearing Aff., Ex. C, BANKS 000554, 566.)

42. When the Plaintiff reported difficulty opening his bag meals, he was thereafter provided his meal on a Styrofoam tray. (Wearing Aff., Ex. A, BANKS 000002.)

43. Upon arrival to Racine County Jail, inmates are classified into one of three custody levels based on their criminal record, past confinement, adjustment, and disciplinary history. (Wearing Aff., Ex. C, BANKS 000552-554.)

44. The Plaintiff received the highest custody classification – "Level 3 Maximum" – due to his extensive and serious criminal history and past confinement. (Wearing Aff. ¶7; see, generally, Ex. A.)

45. The Plaintiff maintained this classification throughout his confinement at Racine County Jail, due in part to his significant disciplinary history within the jail. (Wearing Aff. ¶7.)

46. Cells and dayroom showers for Level 3 Maximum inmates do not contain grab rails for safety and security reasons, including suicide concerns. (Wearing Aff. ¶8.)

47. When the Plaintiff first arrived to Racine County Jail, he was placed in various cells within Level 3 units referred to as "medical segregation" – a housing unit for inmates with special medical requirements pursuant to a request by jail medial staff. (Wearing Aff., Ex. A, BANKS 000001, 69, 75-76.)

48. The Plaintiff made repeated requests to be moved out of medical segregation because he felt healthy enough to go to the general population. (Wearing Aff., Ex. A, BANKS 000077-78, 80-82; Ex. B, BANKS MED 000170.)

49. On January 13, 2014, with the approval of medical staff, the Plaintiff was moved to a "General Population" cell within a Level 3 Maximum security pod. (Wearing Aff., Ex. A, BANKS 000080-82.)

50. Thereafter, the Plaintiff began requesting to be moved to the E-wing, a low security dormitory portion of the jail that was newer and had more "handicap" accommodations, including shower grab rails. The Plaintiff was denied this movement for security reasons. (Wearing Aff. ¶10; Ex. A, BANKS 000120.)

51. An accused inmate may request an administrative hearing on any major rule violation. (Wearing Aff., Ex. C, BANKS 000565.)

52. Inmates are provided the opportunity to be present at a disciplinary hearing, make a statement and present relevant evidence. (Id.)

53. A witness may be allowed to testify if it is not cumulative of other evidence and does not threaten the safety or security of the witness or facility. (Id.)

7

54. A hearing officer may hear testimony of a witness outside the presence of the accused for security purposes. (Id.)

55. Documented as Incident #14-000043, Nurse Mehring reported the Plaintiff had exposed himself to her. Nurse Mehring immediately notified Officer Venegas, who observed the Plaintiff moving his hand away from his groin. (Wearing Aff., Ex. A, BANKS 000139-149.)

56. Deputy Mark Heifner prepared an incident report for Incident #14-000043. He interviewed Nurse Mehring about the incident and noted in the report that the Plaintiff had exposed himself to Nurse Mehring on at least three other occasions, had also exposed himself to Nurses Martinez and Ruskell, and that the repeated problem was brought to the attention of Captain Wearing. Deputy Heifner also interviewed the Plaintiff as part of his investigation. (Id. at BANKS 000140-143.)

57. Correctional Officer Venegas completed a supplementary report regarding Incident #14-000043. (Id. at BANKS 000144.)

58. A disciplinary hearing was scheduled for January 24, 2014 concerning Incident #14-000043. (Id. at BANKS 000146.)

59. The Plaintiff requested an advocate, requested to confront Nurse Mehring, and requested two inmate witnesses: Gerell Rogers and Tyrone Austin. (Id. at BANKS 000145-146.)

60. The Plaintiff was provided CO Olk as a staff advocate. (Id. at BANKS 000145-146; Kallie Aff., Ex. B, p. 3-4.)

61. Ledezma denied the Plaintiff's request to confront Nurse Mehring because she was unavailable at the time of the hearing. (Kallie Aff., Ex. B, p. 3.)

62. Tyrone Austin was unavailable as a witness because he had transferred out of Racine County Jail by the hearing date. Gerell Rogers was either unavailable or refused to appear as a witness. (Id.)

63. As a result of the disciplinary hearing for Incident #14-000043, the Plaintiff was placed in disciplinary segregation for ten days. (Wearing Aff., Ex. A, BANKS 000146.)

64. Documented as Incident #14-000428, Correctional Officer Noonan moved the Plaintiff into disciplinary segregation on February 9, 2014. CO Noonan prepared an incident report, stating that upon arrival in disciplinary segregation, the Plaintiff did not agree with the items he was allowed to have and refused to enter his cell. After assistance was requested, the Plaintiff made a threat to CO Noonan. The statement was also heard by Correctional Officer Nelson. (Id. at BANKS 000171-177.)

65. A disciplinary hearing was scheduled for February 13, 2014 concerning Incident #14-000248. (Id. at BANKS 000176.)

66. The Plaintiff requested two inmate witnesses: Larviso Brown and Tyrone Austin. (Id. at BANKS 000173-176, 709.)

67. The Plaintiff was provided CO Olk as a staff advocate. (Id. at BANKS 000176.)

68. Sergeant Ledezma asked the Plaintiff if he agreed with the discipline write up as it was written and the Plaintiff stated that he did. Consequently, the Plaintiff was found guilty by admission. (Id. at BANKS 000173-176, 709.)

69. Inmate Austin was no longer in custody at Racine County Jail at the time of the hearing and could not be called as a witness. (Id. at BANKS 000173, 175, 709.) Inmate Brown was not called due to the Plaintiff's admission. (Id.)

9

70. As a result of the disciplinary hearing for Incident #14-000248, the Plaintiff was placed in disciplinary segregation for fifteen days. (Id. at BANKS 000173- 176.)

71. The Plaintiff testified that Deputy Koldeway "dipped his shoulder and ran into" him or "bumped" him following comments he made over a prior medical issue while passing Deputy Koldeway in the hallway. (Kallie Aff., Ex. A, 75:18-76:18.) The Plaintiff testified that CO Pearson, who was escorting him at the time of the incident, prevented him from falling backwards and quickly came between the two to break it up. (Id. at 76:19 – 77:6.)

72. The Plaintiff he did not fall to the ground. (Id. at 77:20-22.) The Plaintiff felt pain in the area of his arm wound. (Id. at 79:5-25.) Following the incident, the Plaintiff went to medical for his regular dressing change. (Wearing Aff. ¶12, Ex. E (Pearson Statement), BANKS 000794; see, also, Ex. B, BANKS MED 000171.)

Dated this 21st day of March, 2016.

**BASCOM, BUDISH & CEMAN, S.C.**

s/ Jaclyn C. Kallie
Timothy A. Bascom
State Bar No. 1010017
Jaclyn C. Kallie
State Bar No. 1088902
Attorney for Defendants Classification Officer Joshua Evans, Lieutenant Shawn Barker, Lieutenant Bradley Friend, Sergeant Melissa A. Gonzales, Deputy Nick Koldeway, Sergeant Porfirio Ledezma, Sergeant Melissa Moran, Patrick Noonan, Sheriff Christopher Schmaling and Captain Douglas Wearing

2600 North Mayfair Road, Suite 1140
Wauwatosa, WI 53226
(414) 476-0800