IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TARENCE BANKS,**

    **Plaintiff,**

**v.**

**NURSE LESLIE, ET AL.**

    **Defendants.**

Case No. 14-CV-0381

**MEDICAL DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**NOW COME** the medical Defendants, Nurses Bill Coe, Leslie Patton, and Dana Mehring, and Nurse Practitioner Mahita Gone, by their attorneys, Siesennop & Sullivan, W. Patrick Sullivan and Steven T. Elmer, and they hereby submit this brief in support of their Motion for Summary Judgment under Fed. R. Civ. P. 56.

## STATEMENT OF FACTS

Banks was cleared by the Court's Screening Order (Doc. 8) to proceed with a claim that the medical Defendants were deliberately indifferent regarding "the alleged failure to treat his wound as directed." (Id.) For a complete statement of the material facts, the medical Defendants respectfully refer the Court to their proposed findings of fact, filed herewith.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the Declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). A material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute concerning facts not material to a determinative issue does not preclude summary judgment. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant cannot rest on the pleadings alone, but must designate specific facts in Declarations, depositions, answers to interrogatories, or admissions to establish that there is a genuine triable issue. *See* Fed. R. Cv. P. 56(e); *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). Fed. R. Civ. P. 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S.317 at 322. The non-movant may not rest upon mere allegations or self-serving denials. *Celotex*, 477 U.S. 317 at 324. Bald allegations, without more, are insufficient to create a question of fact in a 42 U.S.C. § 1983 claim. *Patrick v. Jasper County*, 901 F.2d 561, 569 (7th Cir. 1990); *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir. 1985)(conclusory allegations by the party opposing the motion cannot defeat the motion).

Further, the subjective beliefs of the non-movant are not sufficient to create a genuine issue of material fact. *McMillan v. Svetanoff*, 878 F.2d 186, 190-191 (7th Cir. 1989). The non-movant must do more than simply show that there is some metaphysical doubt as to the material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; there must be evidence on which the jury

could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 251-252. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

"It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983) "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). This is precisely the situation with respect to the present case and the medical Defendants' Motion for Summary Judgment should be granted.

**I. The Medical Defendants Are Entitled To Summary Judgment Because There Is No Evidence Establishing Causation Between An Act Or Omission Of The Medical Defendants And Any Harm Suffered By Banks.**

Constitutional torts (of which deliberate indifference to serious medical needs is a subspecies) like traditional torts, require the Plaintiff to prove that the alleged acts or omissions of the Defendants were the proximate cause of an injury. *Jones v. City of Chicago,* 856 F.2d 985, 993 (7th Cir. 1988.) Put another way, at trial Banks will bear the burden of proving that something the Medical Defendants did or failed to do caused him to suffer damages. This he will not be able to do.

Banks' injuries occurred as the result of a gunshot wound and subsequent amputation. Obviously, the injury itself cannot be blamed on the Medical Defendants; the only allegation Banks was cleared to proceed with against the Medical Defendants is that the wound he arrived at the jail with was insufficiently treated. (See Screening Order, Doc. 8.) Thus, Banks bears the

burden of proving that the harm he suffered was the result of the Medical Defendants' supposedly insufficient treatment. *Talifierro v. Augle,* 757 F.2d 157, 161-62 (7th Cir. 1985) ("[F]ederal tort statutes such as 42 U.S.C. § 1983 are not self-contained. They are enacted against a background of common law principles governing causation and damages.") The Medical Defendants are entitled to summary judgment because Banks will be unable to link any act or omission of the Medical Defendants to the harm he claims he suffered.

### A. Medical records conclusively indicate that Banks' arm became infected at the hospital, before he arrived at the jail.

Banks alleges in his Complaint that "Its ordered by an outside medical doctor I was told I needed wet to dry dressing change in which gause was suppose to be wetted and my wounds wiped. Than the wet gause was suppose to be fitted in the wound, this did not happen on a regular basis, which resulted in a infection to my arm and back area." (Complaint, Doc. 1, p. 9).

The incontrovertible medical evidence shows that Banks' allegation is completely unsupported by the record. A Froedtert Hospital doctor's note dated 10/26/13 written by Kathleen Simon, MD states in part "Since that time [Banks] has experienced fevers to 102 degree F and had a positive wound culture for pseudomonas (pan sensitive). ID [Infectious disease] was consulted and the patient was started on Zosyn, likely for a prolonged duration due to the patients' hardware in the infected field." (PFOF ¶ 14-16). Banks was provided Zosyn (an antibiotic) at the hospital due to this infection. (Id.)

In sum, the medical evidence demonstrates that Banks had *already* been suffering from an infection when he arrived at the jail. Banks will bear the burden of proving at trial that something the Medical Defendants did or didn't do caused him harm. This he will be unable to do, because the medical records conclusively show that his arm became infected at the hospital, not at the

jail. The fact is that Banks arm was infected at the hospital, and he was given antibiotics both before and after he arrived at the jail.

Even if we assume that Banks' wound was not infected at the hospital, he would still be unable to prove that something the Medical Defendants did or did not do caused his infection. Infections are common in institutional settings such as hospitals and jails, are common in post-surgical wounds, and can occur despite optimal care and treatment. (PFOF ¶¶ 43-45). In this case, no evidence exists upon which Banks could prove that the infection was a result of the Medical Defendants' deliberate indifference, and not simply a consequence of a healing wound in a bacteria filled institutional environment like the Racine County Jail. Put another way, even had Banks received exactly the treatment he wanted, when he wanted it, there is no evidence to suggest that his wound would not still have become infected.

Thus, even assuming *arguendo* that Banks' wound was treated with deliberate indifference, there is no evidence in the record that supports the claim that this actually caused an infection. Banks will, at trial, bear the burden of proving a causal link between care provided by the Medical Defendants and the alleged infection. However, no evidence in the record establishes such a link, and the Medical Defendants are entitled to summary judgment on this basis. Banks himself has no medical training or education, and there is no expert testimony or medical records establishing a causal link between Banks' claimed damages, i.e. the alleged infection, and the acts or omissions of the medical Defendants.

In conclusion, because there is no evidence that anything the Medical Defendants did or did not do caused Banks harm, the Medical Defendants are entitled to summary judgment.

## II. The Medical Defendants Are Entitled To Summary Judgment Because No Reasonable Jury Could Conclude That They Were Deliberately Indifferent To Banks' Serious Medical Need.

### A. Summary of the Law.

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that the defendants deprived the plaintiff of a right secured by the Constitution and laws of the United States; and (2) that the defendants acted under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980). It is wantonness, not inadvertence or error in good faith that characterizes conduct prohibited by the Eighth Amendment. *Oliver v. Deen*, 77 F.3d 156, 161 (7th Cir. 1996). In the context of providing medical care to prison inmates, the requisite wantonness is defined as deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976.)

The deliberate indifference standard "erects two high hurdles" which every inmate must clear. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "First a plaintiff must show that [his] condition was serious, an objective standard." *Id.* "Second, a plaintiff must show that a state official acted with the requisite culpable state of mind, deliberate indifference, a subjective standard." *Id.* at 591.

#### 1. Serious Medical Need

The first prong of the deliberate indifference standard requires a serious medical need. The notion that every ache, pain, or discomfort creates an Eighth Amendment claim has been rejected by the courts. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372-73 (7th Cir. 1997)(stating that failure to treat a common cold does not support a deliberate indifference claim); *see also Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996)(stating that a prison medical staff's refusal to treat minor "ailments for which many people who are not in prison do not seek medical attention-does not by

its refusal violate the Constitution.") Rather, to be serious, "a condition should constitute a denial of the minimal civilized measure of life's necessities." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez,* 111 F.3d at 1373 (citations omitted). A medical condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* A serious medical need includes "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* Therefore, a serious medical need includes: (1) conditions that are life-threatening or that carry a risk of permanent serious impairment if left untreated; (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering; and (3) conditions that have been "diagnosed by a physician as mandating treatment." *Id.* at 1371-1373.

### 2. Deliberate Indifference.

The latter prong of the deliberate indifference standard is a subjective test as to what the prison official knew regarding plaintiff's condition and whether in the face of that knowledge he or she acted with callous disregard to the condition. The Seventh Circuit has explained that "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d. 645, 652-53 (7th Cir. 1985); *see also Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (deliberate indifference "is more than negligence and approaches intentional wrongdoing").

"Negligence, gross negligence, or 'recklessness' as the term is used in tort cases is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). A plaintiff must demonstrate something approaching a total unconcern for his welfare in the face of serious risks or a conscious, culpable refusal to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992.) As the Seventh Circuit explained in *Dunigan*:

> State officials are deliberately indifferent if they "know [ ] of and disregard [ ] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.

*Dunigan*, 165 F.3d at 591 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed .2d 811 (1994)).

A defendant's failure to alleviate a significant risk that he or she should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment and, thus, falls outside the Eighth Amendment. *Farmer,* 511 U.S. at 838.

In cases dealing with prisoner medical care, like the present case, deliberate indifference has been held to be much more than medical malpractice. *See Snipes v. DeTella*, 95 F.3d. 586, 590 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997). As the United States Supreme Court has stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06.

Questions of medical judgment therefore do not form the basis of Eighth Amendment claims. *Estelle*, 429 U.S. at 107. Prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). *Farmer* requires that medical professionals exercise medical judgment. If a decision is made by a health care professional, it is presumptively valid. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). Therefore, a medical judgment or prescribed course of treatment can only be deliberately indifferent if the judgment and/or treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes* 95 F.3d at 592 (internal quotations omitted). In other words, liability under § 1983 is imposed on a medical professional only when his or her decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole*, 94 F.3d at 262.

Moreover, a prisoner's dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient to prove a constitutional violation occurred. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Likewise, a prisoner's claim that the care he received was not as quick or as efficient as he would have desired does not, without more, raise the claim to the level of a constitutional violation. *Lee v. Akture*, 827 F. Supp. 556, 560 (E.D. Wis. 1993).

A court must examine the "totality of an inmate's medical care" when reviewing a claim for deliberate indifference to a serious medical need, *Dunigan*, 165 F.3d at 591, as isolated instances of negligent acts by state actors are not actionable under the Eighth Amendment. *Gutierrez*, 111 F.3d at 1374-75.

In sum, to establish deliberate indifference, a plaintiff must be able to show that the defendant realized there was imminent danger and consciously or knowingly refused to do anything about it. *Campbell v. Greer,* 831 F.2d 700, 702 (7th Cir. 1987).

### B. No reasonable jury could find that the medical Defendants' were deliberately indifferent to Banks' condition.

The record establishes that Banks received constitutionally adequate care from the Medical Defendants. Banks was discharged from Froedtert Hospital to the jail on November 12, 2013, several weeks after his arm was amputated. (PFOF ¶ 18.) Banks' post amputation arm wound was treated by jail medical staff in a variety of ways. First, Banks received at least four different types of antibiotic drugs. (PFOF ¶ 19, 22-23.) Second, Banks received several different types of pain medication, including Tylenol #3, which is an opiate painkiller designed to treat moderate to severe pain. (PFOF ¶ 20-21.) Third, Banks' wound dressing was changed regularly by jail medical staff. (PFOF ¶ 25-28.) In short, the record indicates that Banks was treated in a variety of ways, almost daily, throughout November and December.

Furthermore, it should be noted that Banks appears to have been his own worst enemy vis a vis his treatment. Banks refused his Tylenol in February and March, 2014. (PFOF 24.) For reasons known only to Banks, he refused the antibiotic cephalexin in December 2013 (PFOF ¶ 23.) Finally, Banks categorically refused to have his dressings changed on January 2, 2013. (PFOF ¶ 32), and he refused further treatment from jail medical staff. (PFOF ¶ 34.) Banks had a right to refuse treatment, but the fact that Banks was offered, and refused, several different types of care refutes the idea that jail medical staff were deliberately indifferent to his medical needs.

Banks was then provided with bandaids and antibiotic ointment to utilize himself. (PFOF ¶ 35.) By this time, his incisions had mostly healed, with only 1-2 cm of open area being present.

(PFOF ¶ 41.) Banks also requested and was granted, a transfer to general population, stating "I feel like I'm healthy enough to go to GP[.]" (PFOF ¶ 36.) Jail medical staff had been attempting to get Banks to learn how to cope with his disability for some time. (PFOF ¶ 37, 39.) Had he been released from custody, Banks would have been responsible for changing his own dressings. (Patton Dec, ¶ 28.)

Banks' claim, as stated in his Complaint, seems to be that jail staff utilized a different form of dressing change from the one discussed by Froedtert staff. (Complaint, Doc. 1, p. 9.) This does not come close to a constitutional violation, and there is no evidence in the record that jail medical staff's treatment of Banks "[was] such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole*, 94 F.3d at 262.

Banks' claim, then, is essentially a complaint about the type of treatment provided and the speed and frequency of that treatment. However, "a prisoner's dissatisfaction . . . with a course of treatment is generally insufficient to prove that constitutional violation occurred." *Johnson,* 433 F.3d 1013. Likewise, a prisoner's claim that the care he received was not as quick or as efficient as he would have desired does not, without more, raise the claim to the level of a constitutional violation. *Akture*, 827 F. Supp. at 560. Banks' complaints are a textbook example of those that do not rise to a constitutional violation as discussed in *Johnson* and *Akture.*

### C. Nurse Mehring and NP Gone are additionally entitled to Summary Judgment because Banks' Complaint does not state a claim for deliberate indifference to serious medical needs against them.

Finally, it should be noted that while Banks was cleared by the screening Order (Doc. 8) to proceed against all of the Medical Defendants on a claim relating to his arm wound care, he does not appear to make such a claim against Nurse Mehring or against NP Gone. Nurse Mehring's

name appears only once in Banks' Complaint, when Banks is discussing a disciplinary issue separate and apart from his medical claims. (Complaint, Doc. 1, p. 13.) Nurse Gone is mentioned only twice, once relating to an alleged denial of a prosthetic arm (Id. at p. 11), and later when Banks wrote "Nurse Practitioner Jane Doe see the area and prescribes an antibiotic." (Id. at p. 12.) Accordingly, Banks is making no claim for deliberate indifference to serious medical need relating to his wound care against either Nurse Mehring or NP Gone and they are both entitled to dismissal on those grounds.

### III. The Medical Defendants Must Be Granted Summary Judgment Because Banks Failed To Exhaust His Administrative Remedies.

A prisoner must exhaust his administrative remedies, i.e. the jail's grievance and appeal process, before bringing a lawsuit under 42 USC § 1983. Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). This requirement applies to claims seeking monetary damages, even if such damages are not available in the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006). An inmate is required to actually exhaust all available administrative remedies, i.e. complete the grievance process to its end. *Id.* at 90-95. It is not enough that the inmate can no longer pursue his administrative remedies because, for example, the time for filing a grievance has elapsed, or the inmate chose not to file a grievance within the time allotted; the inmate *must* complete all the steps of the process in the time allotted before filing a lawsuit. *Id.*

The Seventh Circuit follows this strict requirement: "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). Complaints about correctional medical care fall into the category of complaints about 'prison conditions.' *Perez v. Wisconsin Dept. of Corr.,* 182 F.3d 532, 534 (7th Cir. 1999).

The evidence indicates that, while Banks filed a multitude of grievances (mostly directed towards correctional officers) only two can fairly be said to relate to the treatment of his arm wound; one was filed on February 7, 2014 and the other the next day on February 8. (Doc. 39-7, p. 95-97.) They were both denied by a jail captain on February 12. (Id. at p. 95.) There is no evidence that Banks ever attempted to appeal these grievances per the jail's grievance policy. (No such appeal appears in Banks' grievance file, Doc. 39-7.) The evidence establishes that Banks was aware of the grievance and appeals process and was provided a copy of the jail handbook. (Doc. 39, ¶ 6; Doc. 39-5; Doc. 39-7 p. 104.) Accordingly, Banks failed to exhaust his administrative remedies related to the treatment of his arm, and the medical Defendants must be granted summary judgment on this basis.

## CONCLUSION

In conclusion, the Medical Defendants are entitled to summary judgment for three reasons. First, because there is no evidence establishing a causal link between Banks' alleged infection and any act or omission of the Medical Defendants. Second, because the record establishes that the Medical Defendants did not act with deliberate indifference. Third, because Banks failed to exhaust his administrative remedies.

Respectfully submitted this 21st day of March 2016.

| | |
|---|---|
| P.O. ADDRESS:<br>SIESENNOP & SULLIVAN<br>111 West Pleasant Street – Suite 110<br>Milwaukee, Wisconsin 53212<br>Telephone: 414-223-7900<br>Facsimile: 414-223-1199<br>psullivan@s-s-law.com<br>selmer@s-s-law.com | SIESENNOP & SULLIVAN<br>Attorneys for Defendants, Leslie Patton, William Coe, Dana Mehring, and Mahita Gone<br><br>*s/ Steven T. Elmer, Esq.*<br>W. Patrick Sullivan<br>State Bar No. 1006235<br>Steven T. Elmer<br>State Bar No. 1088018 |

Page 13 of 13
Case 2:14-cv-00381-PP   Filed 03/21/16   Page 13 of 13   Document 153