IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TARENCE BANKS

    Plaintiff,

v.

NURSE LESLIE, ET AL.

    Defendants.

Case No. 14-CV-381
Case Code:

**PROPOSED FINDINGS OF FACT OF DEFENDANTS LESLIE PATTON, BILL COE AND DANA MEHRING, AND NURSE PRACTIIONER MAHITA GONE IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**NOW COME** the Medical Defendants, Nurses Leslie Patton, Bill Coe, and Dana Mehring, and Nurse Practitioner Mahita Gone, by their attorneys, Siesennop & Sullivan, and they hereby submit the following proposed material facts in support of their Motion for Summary Judgment.

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the Plaintiff, Tarence Banks, has alleged a violation of his constitutional rights pursuant to 42 U.S.C. § 1983. (See Generally Complaint, Doc. 1).

2. The Eastern District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) as the events or omissions giving rise to the claim occurred in Racine County, Wisconsin. (Id.)

## Procedural Background and Banks' Allegations

3. Banks was incarcerated at the Racine County Jail from November 12, 2013 to the end of 2014. (See Generally Doc. 1.)

4. On April 3, 2014, Banks filed a Complaint with this Court seeking recovery under 42 USC § 1983, claiming that the medical Defendants violated his constitutional rights. (Complaint, Doc. 1, p. 5-9.)

5. Specifically, Banks alleges that he was subject to deliberately indifferent treatment in relation to wound treatment he received at the jail after his arm was amputated. (Complaint, Doc. 1, p. 4-5.)

6. Banks' left arm was amputated as the result of a shotgun blast that struck him on October 8, 2013. He spent the rest of October and the first part of November in the hospital. Banks was transported to the Racine County Jail on November 12, 2013. (Doc. 1, p. 5-6.)

7. The Court's Screening Order (Doc. 8) permitted Banks to litigate a deliberate indifference claim against the Medical Defendants regarding treatment for his amputation wound.

8. Banks is seeking compensatory damages, injunctive relief, and attorneys' fees based on the Defendants' violations. (Doc. 1, p. 20.)

## Factual Background

9. Nurses Coe is a licensed practical nurse (LPN) in the state of Wisconsin. His license was active from November 12, 2013 through 2014. (Elmer Aff. ¶ 3, Ex. 2.)

10. Nurse Patton is a registered nurse (RN) in the state of Wisconsin. Her license was active from November 12, 2013 through 2014. (Elmer Aff. ¶ 3, Ex. 2.)

11. Nurse Mehring is a registered nurse (RN) in the state of Wisconsin. Her license was active from November 12, 2013 through 2014. (Elmer Aff. ¶ 3, Ex. 2.)

12. NP Gone is a nurse practitioner (NP) in the state of Wisconsin. Her license was active from November 12, 2013 through 2014. (Elmer Aff. ¶ 3, Ex. 2.)

13. From November 12, 2013 and into 2014, Nurses Coe, Patton, and Mehring and NP Gone were employed by Correctional Healthcare Companies (CHC) to provide healthcare services to inmates at the Racine County Jail. (Respective Declarations.)

14. While at Froedtert Hospital being treated for his shotgun wound, Banks developed a bacterial infection in his wounded arm. (Patton Dec., Ex. 1, p. 219.)

15. Specifically, a note from Froedtert Hospital dated 10/26/13 states ". . . [Banks] has experienced fevers to 102 degree F and had a positive wound culture for pseudomonas (pan sensitive). ID [infectious disease] was consulted and the patient was started on Zosyn, likely for a prolonged duration due to the patient's hardware in the infected field." (Id.)

16. Thus, an infection in Banks' wound pre-dated his admission to the jail. (Id.)

17. In her role as a licensed healthcare provider at the Racine County Jail Health Services Unit ("HSU") Nurse Patton had access to inmate medical records and charts, including progress notes, problem oriented records, written inmate requests for medical care ("Medical Slip"), medical administration records ("MAR"), and other medical records, and she has reviewed those documents for Banks as they pertain to this matter. Pertinent portions of those records are attached as Exhibit 1. (Patton Dec., ¶ 4, Exhibit 1.)

**Banks' Treatment at the Racine County Jail**

18. Banks was discharged from the hospital and arrived at the jail on November 12, 2013. (Doc. 1, p. 6.)

19. Over the next several months, jail medical staff treated Banks' amputation wound in a variety of ways; by regularly changing his dressing, providing antibiotics, and by providing pain medication. (See generally Ex. 1.)

20. Banks received Tylenol #3 and regular Tylenol to control his pain. (Patton Dec., Ex. 1, p. 182, 198, 267, 359, 364.)

21. Tylenol #3 is an opiate painkiller comprised of Codeine and Tylenol used to treat moderate to severe pain. (Patton Dec., ¶ 17.)

22. At the jail, Banks also received Ciproflaxin, Cephalexin, Levofloxacin, and Bactrim, all antibiotic drugs. (Patton Dec. Ex. 1, p. 181-82, 198.)

23. Banks signed a refusal form for Cephalexin on December 5, 2013. (Patton Dec. Ex. 1, p. 193.)

24. Banks refused his Tylenol in February and March, 2014 (Patton Dec. Ex. 1, p. 358-59, 363-64.)

25. In addition to the regular administration of painkillers and antibiotics, Banks' wound dressing was changed regularly at the jail. (See generally Patton Dec., Ex. 1.)

26. Banks spent the first 12 days of November in at Froedtert Hospital (Doc. 1, p. 6) and attended a doctor visit on November 21. (Patton Dec. Ex. 1 p. 197.)

27. Accordingly, Banks spent 18 days in the jail in November 2013. (Id.) His dressing was changed at least 14 times in November 2013 by medical staff. (Patton Dec. Ex. 1, p. 197 documents the November dressing changes.)

28. Banks' wound dressing was changed by medical staff at least 22 times in December of 2013. (Patton Dec. Ex. 1, p. 179-80 document the December dressing changes.)

29. On November 20, 2013, NP Gone noted that Nurse Leslie Patton reported that Banks was experiencing drainage from his wound. Nurse Patton noted that she had cleansed the wound and applied ointment with a bandage. NP Gone wrote that Banks should take the antibiotic Bactrim for 7 days. (Ex. 1, p. 207.)

30. On December 4, 2013, NP Gone noted that an RN had reported Banks was still experiencing drainage; she prescribed another antibiotic. (Ex. 1, p. 195.)

31. On December 11, 2013, NP Gone examined Banks. (See Ex. 1, p. 192.) She noted a 2cm wide wound with a scant amount of purulent discharge. There was also a separate 1cm wide open area with no drainage. NP Gone further noted that Banks was on the antibiotic Ciproflaxin, and that he had previously refused to take the antibiotic cephalexin. NP Gone wrote that Banks should continue to receive regular dressing changes, antibiotics, and pain medication. (See Id.)

32. Banks refused to have his dressing changed on January 2, 2014, stating, "I don't want to have my dressing changed anymore." (Patton Dec. Ex. 1, p. 177-78.)

33. Being a competent adult, Banks had a right to refuse medical treatment. (Patton Decl. ¶ 23.)

34. At this time, Banks refused further treatment from jail medical staff. (Banks proposed Amended Complaint, Doc. 105-1, ¶¶ 93, 161.)

35. Jail medical staff provided Banks with bandages and instructed him on how to change his dressing himself. (Patton Dec. Ex. 1, p. 171.)

36. Banks sent an Inmate Medical Request to jail medical staff on January 13, 2014 stating that he felt healthy enough to be transferred to the general population; jail staff agreed and he was transferred to general population. (Patton Dec., Ex. 1, p. 170.)

37. Nurse Patton had made a medical judgment that Banks was sufficiently healed to change his dressing himself and to wash his own left arm area. (Patton Dec. ¶ 27.)

38. Banks is right handed; he lost his non-dominant hand/arm. (Elmer Aff. ¶ 3, Ex. 1.)

39. Jail medical staff had made a medical judgment that, for rehabilitation purposes, Banks needed to attempt to adapt to living his life with one arm. ("You need to exercise your [right] arm / use it. . . as much as you can.") (Patton Dec. ¶ 26-27, Patton Dec. Ex. 1, p. 190.)

40. Banks refused his Tylenol in February 2014. (Patton Dec., Ex. 1, p. 358.)

41. By January of 2014, Banks' amputation wound had healed with the exception of two small open areas. (Ex. 1, p. 192, 163.)

42. On January 28, 2014, NP Gone again examined Banks. (Ex. 1, p. 163) She noted no swelling or erythema (redness) at the site of the amputation. She further noted that a scant

amount of drainage was coming from a 1.5cm open area on Banks' stump. Banks was provided an antibiotic ointment and bandaids to change himself. (Ex. 1, p. 163.)

43. Infections are common in post-surgical wounds (Coe Dec., ¶ 15.)

44. Infections are common in institutional settings such as hospitals and jails. (Coe Dec. ¶ 14.)

45. Infections can occur even when optimal care and treatment is provided. (Coe Dec. ¶ 16.)

Dated this 21st day of March 2016.

        SIESENNOP & SULLIVAN
        Attorneys for Defendants,
        Correctional Healthcare Companies, Nurses
        Leslie Patton, Dana Mehring, and Bill Coe,
        and Nurse Practitioner Mahita Gone.

        *s/ Steven T. Elmer*
        W. Patrick Sullivan
        State Bar No. 1006235
        Steven T. Elmer
        State Bar No. 1088018

PO ADDRESS
111 W. Pleasant St., Suite 110
Milwaukee, WI 53212
Telephone: 414-223-1799
Facsimile: 414-223-1199
psullivan@s-s-law.com
selmer@s-s-law.com