UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TARENCE BANKS,

          Plaintiff,

v.

          Case No. 14-cv-381-pp

LESLIE PATTON, *et al.*,

          Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 152)**

---

On May 27, 2014, District Judge Lynn Adelman (the judge assigned to this case at the time) screened the plaintiff's complaint under 28 U.S.C. §1915A. Dkt. No. 8. Judge Adelman allowed the plaintiff to proceed on claims against two sets of defendants: correctional staff who worked at the Racine County Jail (the jail defendants) and medical staff who were employed by Correctional Healthcare Companies to provide healthcare services to inmates at the Jail (the medical defendants). Id.; Dkt. No. 154 at ¶13.

On March 21, 2016, the jail defendants and the medical defendants filed separate motions for summary judgment. Dkt. Nos. 146, 152. Both sets of defendants argued, in part, that the plaintiff had failed to exhaust the available administrative remedies before he filed his federal complaint. On August 2, 2016, the court held an evidentiary hearing to examine whether the defendants' exhaustion arguments had merit. Dkt. No. 196.

On February 22, 2017, the court dismissed the plaintiff's claims against the medical defendants because it concluded that he had failed to exhaust the available administrative remedies before he filed the case. Dkt. No. 199. The

1

court also dismissed his claims against the jail defendants—some because he had failed to exhaust the available administrative remedies and some on the merits. Id. A couple of weeks later, the plaintiff filed a notice of appeal. Dkt. No. 201. The plaintiff challenged the court's finding that the jail defendants were entitled to summary judgment on his claim that they had violated the Americans with Disabilities Act when they failed to place him in a handicap cell. Dkt. No. 222 at 4. He also challenged the court's finding that he had failed to exhaust his deliberate indifference claim against the medical defendants. Id.

On July 26, 2018, the Seventh Circuit Court of Appeals affirmed the court's entry of summary judgment for the jail defendants on the disability-discrimination claim, but it vacated the court's judgment of dismissal for the medical defendants based on the plaintiff's failure to exhaust. Id. at 8. The appellate court remanded the case to this court so that it could evaluate the merits of the plaintiff's deliberate indifference claim against the medical defendants. Id. at 8.

On August 6, 2018, the court informed the parties that it would decide the remanded claims based on the parties' previously-filed summary judgment briefs (they had briefed the substantive issues as well as exhaustion). Dkt. No. 221. Having reviewed the briefs, the court finds that defendant Mahita Gone is entitled to summary judgment on the plaintiff's deliberate indifference claim, but defendants William Coe, Leslie Patton and Dana Mehring are not.

I.  **FACTS**[1]

---

[1] The court takes the facts from the plaintiff's sworn complaint (Dkt. No. 1), "Proposed Findings of Fact of Defendants Leslie Patton, Bill Coe, and Dana Mehring, and Nurse Practitioner Mahita Gone in Support of their Motion for Summary Judgment" (Dkt. No. 154), "Medical Defendants' Response to Plaintiff's Proposed Findings of Fact" (Dkt. No. 181), and "Medical Defendants'

The plaintiff's medical claims involve four defendants: Nurses Coe, Patton and Mehring and Nurse Practitioner Gone. The medical defendants were employed by Correctional Healthcare Companies to provide healthcare services to inmates at the jail. Dkt. No. 154 at ¶13.

A. The Plaintiff's Version of his Medical Treatment

The plaintiff is an amputee; his left arm was amputated as a result of a shotgun blast that hit him on October 8, 2013. Dkt. No. 154 at ¶6. He spent the rest of October and the first part of November at the hospital; he was transported to the jail on November 12, 2013. Dkt. No. 1 at 6; Dkt. No. 154 at ¶6.

According to the plaintiff, prior to his transfer to the jail, an outside doctor ordered that he receive "wet to dry dressing change[s]." Dkt. No. 1 at 6. The plaintiff explains that the gauze was supposed to be wetted, the wound wiped and the wet gauze fitted into the wound, but he says that this did not happen on a regular basis. Id.

The plaintiff asserts that throughout the month of November 2013, he had to get help from other inmates to change his bandages; he states that at most, nurses would change his bandages once per week and he'd sometimes go days without changing his bandages. Dkt. No. 181 at ¶¶4, 14. He states that when he asked Coe why medical staff wasn't changing his bandages, Coe would tell him that he wasn't a priority and that Coe thought that another inmate was helping the plaintiff. Id. at ¶¶5, 14. The plaintiff asserts that other nurses would acknowledge his injury but do nothing to help him. Id. at ¶¶7, 8, 12. The plaintiff also explains that despite numerous requests, the medical defendants refused to help him wash his hand/right arm and that, on November 30, 2013,

---

Reply to Plaintiff's Response to Medical Defendants' Proposed Findings of Fact" (Dkt. No. 182). The facts are undisputed unless otherwise noted.

3

he received bandages so he could change them himself (it is not clear from whom). Id. ¶¶8-10, 46.

According to the plaintiff, on December 4, 2013, he took a shower and the smell from his wound was so bad that he and another inmate were bothered by the smell. Id. at ¶16. The plaintiff states that he fell in the shower and his wound re-opened. Id. The plaintiff explains that the next day, medical staff treated the re-opened wound with gauze. Id. at ¶17. The plaintiff asserts that he talked to Coe about getting his bandages changed, but Coe told him that they were trying to get him to change his own bandages. Id. at ¶18.

A few days later, on December 8, 2013, Coe changed the bandages on the plaintiff's arm and noted a "scant" amount of drainage. Id. at ¶19. The plaintiff's bandages were not changed for the next two days. Id. ¶20. The plaintiff states that he submitted a request slip, noting that there was green pus coming from his arm. Id. ¶20. Someone changed the plaintiff's bandages later that day. Id.

On December 11, 2013, Gone assessed the plaintiff and included daily dressing changes as part of the treatment plan. Id. at ¶21. The plaintiff asserts that for the next week he had green drainage coming from his arm, and that it was red and sore. Id. at ¶22.

On December 18, 2013, about a week after seeing Gone, the plaintiff went to Froedtert Hospital, where he was seen by Dr. Uppal. Id. at ¶23. According to the plaintiff, Dr. Uppal told him that his arm might have to be re-opened because of a possible infection in the armpit. Id. at ¶23. Dr. Uppal ordered daily, wet-to-dry bandage changes twice per day. Id.

The plaintiff states that the next day no one changed his bandages. Id. at ¶24. He asserts that he asked Patton why, and notified her of Dr. Uppal's orders. Id. According to the plaintiff, Patton said that they say a lot of things at

4

Froedtert. Id. The plaintiff states that Patton only put gauze on the wound and told him he'd be ok. Id. at ¶5. According to the plaintiff, Patton did a wet-to-dry bandage change on December 20, 2013. Id. ¶27. No bandage change happened the next day. Id. at ¶28.

The plaintiff asserts that on December 22, 2013, Coe changed his bandages, but used "grease gauze" instead of using wet-to-dry. Id. at ¶29. According to the plaintiff, when he questioned Coe, Coe told him that was all they had. Id. The plaintiff states that, on December 24, 2013, Coe did not do a wet-to-dry bandage change and told the plaintiff that the treatment was over with. Id. at ¶30. The next day, when the plaintiff talked to Patton about the fact that wet-to-dry changes are not being done, and when they were they were not done correctly, she told him that she didn't have time for all that. Id. at ¶31.

On December 26, 2013, Coe did a wet-to-dry bandage change; the plaintiff states, however, that Coe stuffed the plaintiff's wound with gauze so hard that the plaintiff jumped. Id. at ¶32. The plaintiff states that he told Coe that he would never get the opportunity to do that again. Id. The plaintiff states that the next day he let Coe do the wet-to-dry bandage change, but he did not let him stuff the wound. Id. at ¶33. According to the plaintiff, on the following two days, Mehring changed his bandages, but she did not follow the wet-to-dry protocol. Id. at ¶34. The two days after that, Patton changed the plaintiff's bandages, but declined his request that she follow the wet-to-dry protocol. Id. at ¶37.

The plaintiff's bandages were not changed January 2 through January 5, 2014, although the medical defendants assert that this is because the plaintiff refused treatment. Id. at ¶38. The plaintiff clarifies that he refused to let Coe change his bandages because Coe kept trying to hurt him, but medical staff stated that he was refusing treatment all together. Id. at ¶39. Patton changed

5

the plaintiff's bandages on January 6, 2014 and, according to the plaintiff, noted that his wound was draining. Id. at ¶40. The plaintiff states that the next day, he and Coe argued about how Coe was changing the bandages and handling the plaintiff. Id. at ¶41. On January 8, 2014, the plaintiff complained to Mehring that he was not receiving daily bandage changes. Id. at ¶42.

The plaintiff states that he went to Froedtert on January 9, 2014, where he was told that he needed to change his dressing daily with dry gauze, had a lateral incision and also needed wet-to-dry dressing changes once per day. Id. at ¶49[2]. The plaintiff asserts that the next day he received bandages so he could do his own bandage changes. Id. at ¶44. Gone states that she gave him a supply of Band-Aids so he could change his Band-Aids as needed. Id. at ¶45.

On February 1, 2014, the plaintiff wrote to health services and asked for pain medication because he was in a lot of pain. Id. at ¶48 (p. 11). He also wrote that he still had a hole in his arm and he would like to talk to someone about how to clean his arm and he would like help with the dressing. Id. The plaintiff received a response, which said in part, "[no] open area to skin, [no] tunneling, [no] discharge seen, continue with using bandaid [as needed]." Id. at ¶48 (p. 11).

About a week later, the plaintiff wrote to health services again and asked them if they were supposed to be washing his arm and back because it was not being done. Id. at ¶51. He informed health services that he had a wound on his arm and his skin was irritated. Id. Someone responded that no rash had been noticed before, but the issue was addressed. Id.

---

[2] The plaintiff began repeating paragraph numbers in his proposed findings of fact, starting at paragraph 48. This paragraph 49 is the second such numbered paragraph; it appears at page 11 of Dkt. No. 181.

A. The Medical Defendants' Version of the Plaintiff's Medical Treatment

The medical defendants disagree with the plaintiff's characterization of the treatment he received. They assert that medical staff treated the plaintiff's wound in a variety of ways, including by regularly changing his bandages, giving him antibiotics and giving him pain medication. Dkt. No. 154 at ¶19.

While the plaintiff concludes that he developed an infection in his arm and back as a result of infrequent bandage changes, dkt. no. 1 at 9, the medical defendants note that the plaintiff developed an infection before he came to the jail, while he was still at the hospital, dkt. no. 154 at ¶14-16. The plaintiff complains that he told nurses more than fifteen times that the antibiotics he was taking were not working, dkt. no. 181 at ¶66; the medical defendants state that while at the jail, the plaintiff was given the following antibiotics: Cirpoflaxin, Cephalexin (which the plaintiff refused), Levoflaxacin and Bactrim, dkt. no. 154 at ¶22. They also note that Gone prescribed antibiotics on November 20 and again on December 4, 2013, after Patton reported that the plaintiff's wound was still draining. Id. at ¶¶29-30. On December 11, 2013, after noting a wound with a "scant" amount of discharge, Gone wrote that the plaintiff should continue to receive regular dressing changes, antibiotics and pain medication. Id. at ¶31.

The medical defendants dispute the plaintiff's assertion that they did not change his bandages regularly. They note that the plaintiff was at the jail for eighteen days in November 2013, and assert that during that time medical staff changed his bandages at least fourteen times. Dkt. No. 154 at ¶27. They assert that medical staff changed the plaintiff's dressings at least twenty-two times in December 2013. Id. at ¶28. They allege that on January 2, 2014, the plaintiff

7

refused to have his dressing changed. Id. at ¶32. They stated that the plaintiff refused any further treatment from staff; they state that staff provided the plaintiff with bandages and gave him instructions on how to change them himself. Id. at ¶¶34-35.

According to the medical defendants, the plaintiff's wound had healed by January 2014, except for two small open areas. Id. at ¶41. On January 28, 2014, Gone examined the plaintiff and noted no swelling or redness at the amputation site, though there was a "scant" amount of drainage coming from an open area on the stump. Id. at ¶42. The plaintiff received antibiotic ointments and Band-Aids to change himself. Id.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

    B.    <u>Deliberate Indifference to Serious Medical Needs</u>

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. <u>Id.</u> To survive summary judgment the plaintiff must produce sufficient evidence for a jury to reasonably conclude that he has proven each element of the standard.

The crux of the plaintiff's argument is that the medical defendants did not regularly and properly change his bandages, which caused the infection in his arm to persist, resulting in a lot of pain. The medical defendants argue that they changed the plaintiff's bandages regularly and that, even if they did not, the plaintiff has not presented evidence demonstrating that their failure to do so is what caused his infection to persist. The court disagrees.

9

The plaintiff has explained, in detail, how he asked Coe, Patton and Mehring repeatedly to change his bandages; he has alleged that they regularly ignored him or failed to help him, forcing the plaintiff to rely on other inmates to do it. He notes that medical staff changed his bandages about once per week and that they regularly failed to follow the wet-to-dry application prescribed by his doctor at Froedtert and noted by medical staff (dkt. no. 151-1 at 10).

The medical defendants argue that the plaintiff's medical records demonstrate that they changed the plaintiff's bandages *nearly* every day, but the court notes that many of those records have no date on them (*see, e.g.*, dkt. no. 156-1 at 11, dkt. no. 157-1 at 19). Even if they did, the records themselves show that the instructions were not that the bandages should be changed "nearly" every day; the records include instructions that the plaintiff receive daily application of salve with his bandage changes (dkt. no. 156-1 at 11), daily dressing changes until there was no discharge for several consecutive days (dkt. no. 157-1 at 19), and wet-to-dry dressing changes "per Froedtert" (dkt. no. 156-1 at 10).

The plaintiff asserts that the records are not accurate. The defendants respond that the plaintiff's statements about his treatment and the accuracy of his records are self-serving and unsupported by evidence. As for the "self-serving" argument, the Seventh Circuit long ago rejected the notion that a fact that an affidavit is "self-serving" dooms it as sufficient evidence to oppose summary judgment. Almost sixteen years ago, in Payne v. Pauley, the court noted that "most affidavits submitted for" summary judgment purposes are self-serving; the real issue is whether the affidavit is "based on personal knowledge as required by the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) . . . and by Federal Rule of Evidence 602 . . . ." Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003). The assertions the plaintiff has

10

made in his various affidavits are based on his personal knowledge of what happened to him; the court isn't sure what other form of evidence the plaintiff could provide to prove that something didn't happen or that documents created by the defendants don't accurately reflect what happened. The question of which party's version is more credible is a question for the fact-finder at trial, not one for the court to resolve on summary judgment.

It is true that at this point the plaintiff has not proven definitively that the defendants' failure to change his dressings every day, and in the way the instructions required, caused his arm to get infected or made the infection worse. But common sense dictates that wounds, especially as serious as the plaintiff's, must be kept clean in order to prevent or treat infections, and that regular, consistent bandage changes, especially in an environment as contaminated as a jail, help keep wounds clean. At the summary judgment stage, the plaintiff does not have to definitely prove that the defendants' alleged indifference caused or worsened his infection. He needs only raise a dispute as to that issue. He has asserted that there was drainage, and pus, and pain in his arm. There seems to be no dispute that there was some sort of infection, and that it lasted for some time. This is sufficient to raise a dispute as to whether the defendants' actions (or inactions) caused the plaintiff injury. Accordingly, the court finds that, should a jury credit the plaintiff's version of how his wounds were treated, it could reasonably conclude that Coe, Patton, and Mehring[3] were deliberately indifferent to his serious medical needs.

---

[3] The medical defendants argue that the plaintiff's complaint fails to state a claim against Mehring because it contains only a single allegation against her. As required, the court construed the complaint broadly when screening it; further development of the record has revealed the full extent of Mehring's involvement in the plaintiff's care.

The court finds, however, that Gone is entitled to summary judgment. Gone is a nurse practitioner, not a nurse, so she was not responsible for the plaintiff's daily bandage changes. On the few instances that Gone examined the plaintiff, she prescribed daily bandage changes, antibiotics to treat his persistent infection and the application of salve to the plaintiff's wounds. These responses do not demonstrate deliberate indifference. Under §1983 there is no vicarious liability, so if other members of the jail staff did not follow her orders, she cannot be held liable on that basis. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (public officials are responsible for their own misdeeds but not for anyone else's). The court will grant summary judgment as to Gone.

## III. CONCLUSION

The court **GRANTS** the medical defendants' motion for summary judgment as to Mahita Gone and **DISMISSES** her as a defendant. Dkt. No. 152.

The court **DENIES** the medical defendants' motion for summary judgment as to defendants William Coe, Dana Mehring and Leslie Patton. Dkt. No. 152.

While the court recruited counsel for the plaintiff in 2016, it did so on a limited basis, for the purpose of having someone represent the plaintiff at the evidentiary hearing on exhaustion. Dkt. No. 191. The court now will recruit a lawyer to represent the plaintiff on his surviving claims. After it does so, it will schedule a telephone conference to discuss how the parties would like to proceed.

Dated in Milwaukee, Wisconsin this 14th day of January, 2019.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**